962 So.2d 105 (2007)
Maria L. SWANEY, Appellant
v.
Richard C. SWANEY, Appellee.
No. 2006-CA-01558-COA.
Court of Appeals of Mississippi.
July 31, 2007.
William L. Ducker, Purvis, attorney for appellant.
*106 Allen Flowers, Hattiesburg, attorney for appellee.
Before KING, C.J., GRIFFIS, BARNES and ROBERTS, JJ.
ROBERTS, J., for the Court.

STATEMENT OF THE CASE
¶ 1. Richard and Maria Swaney were married in January 2000 in the State of Ohio. Unhappy with the current state of their marriage, Maria in 2003 left the marital home and came to Mississippi. Richard soon after filed for divorce in Ohio; however, despite attempts to notice Maria at her last known pre-marriage address, she did not attend the hearing. The Auglaize County Common Pleas Court, Domestic Relations Division (Ohio court) granted Richard a divorce and made a property division. Subsequent to Richard finding Maria in Mississippi and collecting his vehicle awarded to him by the Ohio court, Maria attacked the Ohio judgment in the Chancery Court of Lamar County on jurisdictional grounds, and concurrently attacked jurisdiction in Ohio. The Ohio court ruled against Maria on the merits of her claim, and, in turn, the chancery court overruled Maria's motion attacking jurisdiction based upon the doctrine of res judicata. From this order, Maria appeals. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. Richard and Maria were married on January 23, 2000, in Auglaize County Ohio. No children were born to the marriage. The parties separated on or about September 19, 2003, when Maria left the marital home for parts unknown. As later discovered, she moved to Mississippi following her flight from Ohio. However, Richard, at all relevant times, would remain an Ohio resident.
¶ 3. Following Maria's abandonment of the marital residence, Richard filed for divorce in the Auglaize County Common Pleas Court, Domestic Relations Division of Wapakoneta, Ohio (Ohio court). The clerk of courts in Ohio attempted certified mail service to Maria's last known address, a post office box in Ohio, but it was returned as unclaimed. A second attempt was made to serve Maria at her post office box by regular mail. This service was not returned prior to the divorce hearing. After Maria again failed to respond, service was presumed effective under Ohio law. Following a sua sponte continuance of the matter from January 6, 2004, a trial was held on February 2, 2004. Maria was neither present nor represented by counsel. The Ohio court subsequently entered its judgment of divorce on February 13, 2004. Among the property division of the parties, Richard was awarded a 2001 GMC Sierra free and clear of any claim of Maria, as well as a judgment of $29,300 against Maria. Richard claimed the 2001 GMC Sierra was titled in his name.
¶ 4. Richard would later locate Maria in Lumberton, Mississippi, in April 2004. After locating Maria, Richard came to Mississippi, personally handed Maria a copy of the Ohio judgment of divorce, and retrieved his 2001 GMC Sierra. Maria then filed her complaint for collateral attack on foreign judgment in the Chancery Court of Lamar County on July 8, 2004. Maria claimed that she had not been properly served in the divorce action in either Ohio or Mississippi, and, as a result, the Ohio court lacked in personam jurisdiction. Additionally, she claimed that Richard failed to properly register the Ohio judgment before attempting self-help repossession. Finally, Maria claimed she was entitled to have her complaint for divorce heard and litigated in Mississippi. Richard responded on September 2, 2004, and *107 claimed the chancery court did not have subject matter over the claim or personal jurisdiction over him. He further objected on the basis of res judicata.
¶ 5. Before the Mississippi action would find its way to a hearing, the parties's focus would return to Ohio. On September 20, 2004, the clerk of the Ohio court noticed failure of service in that those pre-divorce notices sent to Maria were returned due to the post office box being closed with no forwarding address. Richard filed his motion to set aside failure of service with the Ohio court on October 14, 2004. Soon after, Maria's Mississippi complaint came on for hearing on November 8, 2004. While the details of this hearing are not within the record, in a subsequent order of the chancery court, the chancellor stated that, over disagreement by Maria, the court "directed [Maria] to suspend litigation in Mississippi, pending her making an appearance in the state of Ohio on a Petition to re-consider based upon contested service of process."
¶ 6. By order filed November 23, 2004, the Ohio court denied Richard's October 14, 2004 motion to set aside failure of service. In doing so, the Ohio court stated that the administrative act by the clerk of noticing failure of service did not affect the court's judgment of divorce, and that the judgment would stand until someone challenged jurisdiction. At the directive of a Mississippi chancery court and subtle push of the Ohio court, Maria filed her motion contesting jurisdiction in the Ohio court on January 12, 2005. Following Richard's response, a hearing on the motion was set for February 28, 2005. At the request of Maria, the hearing was continued to May 17, 2005. Maria failed to appear, in person or through representation. Subsequent to the May 17 hearing, the Ohio court, by order filed May 25, 2005, dismissed Maria's motion for failure to prosecute, and further dismissed it upon the merits. As such, the Ohio court ordered "that the original Decree of Divorce stands."
¶ 7. Maria then filed an amended motion for collateral attack on foreign judgment with the Chancery Court of Lamar County on February 8, 2006, in which she detailed the final disposition of the Ohio court, and again requested the chancery court not to recognize the Ohio divorce and resultant division of marital property. Following Richard's response, a hearing was held on Maria's amended motion. In an August 24, 2006 order, the chancery court overruled Maria's motion as it reasoned, based upon the decision of the Ohio court, that the matter was barred by the doctrine of res judicata. Maria's appeal followed.

ANALYSIS
¶ 8. Although neither party argued this point, Maria's ability to collaterally attack the Ohio judgment in this state would seem to be premature. See Schwartz v. Hynum, 933 So.2d 1039 (¶ 10) (Miss.Ct.App.2006) (stating that upon the filing of notice of enrollment the defendant then had twenty days to contest it). First, Maria's collateral attack of the Ohio judgment is not one of those actions that are expressly entitled to, at the trial court's discretion, a declaratory judgment. See M.R.C.P. 57. Secondly, there is an issue of the justiciability of Maria's attack. Distinct from the typical thresholds of personal and subject matter jurisdiction, claims must present "controversies that are definite and concrete, that touch the relations of real parties having antagonistic interests." 1 Jeffrey Jackson, Mississippi Civil Procedure § 1:21 (1999). As stated by our supreme court, "[i]t is one of the fundamentals of judicial procedure that courts will not undertake to decide abstract questions when there is no actual justiciable issue between the purported litigants." *108 Ladner v. Fisher, 269 So.2d 633, 634 (Miss. 1972). One component of a justiciable claim is ripeness. Jackson, supra, at 1:22. Concerning ripeness, aside from those claims brought under Rule 57, "[a] cause of action must exist and be complete before an action can be commenced, and, when a suit is begun before the cause of action arises, it will generally be dismissed if proper objection is taken." State ex rel. Holmes v. Griffin, 667 So.2d 1319, 1325 (Miss.1995) (quoting Euclid-Mississippi v. Western Casualty & Surety Co., 249 Miss. 547, 163 So.2d 676, 679 (Miss.1964)).
¶ 9. At the time of appeal, it appears from the record that Richard had not attempted in any way to enforce his Ohio judgment in Mississippi nor attempted to enroll the Ohio judgment through the process provided for in Mississippi Code Annotated Sections 11-7-301-309 (Rev.2004). While there does not appear to be precedent expressly speaking to this issue, it is clear that a cause of action attacking the judgment of a foreign state is not ripe until, and if, enrollment of that judgment is attempted. As stated by one commentator, "[i]t is not enough that a controversy might one day erupt; plaintiff must show that it has already done so, thereby presenting a legal issue in a concrete context." Jackson, supra, at 1:22 (citations omitted). However, no objection was made by Richard to the proceedings on justiciability grounds. Therefore, as Richard raised no objection, and the trial court did not dismiss the action upon its own motion, we proceed to reach the merits of Maria's appeal.
I. WHETHER THE TRIAL COURT ERRED IN OVERRULING MARIA'S MOTION FOR COLLATERAL ATTACK ON FOREIGN JUDGMENT.
¶ 10. Within her argument of her sole issue, Maria alleges several points of error. These include that the trial court erred in overruling the aforementioned motion, that the trial court erred in failing to hold a hearing on the merits of her claim, that the trial court erred in suspending her collateral attack and directing her to challenge personal jurisdiction in Ohio, and that Richard obtained the judgment of divorce under false pretenses. However, in Maria's initial complaint collaterally attacking the Ohio judgment and her amended motion for collateral attack, she only raised the issue of lack of personal jurisdiction of the Ohio court. This Court has long held that issues not presented to the trial court are deemed waived on appeal. Williams v. Gamble, 912 So.2d 1053(¶ 30) (Miss.Ct.App.2005) (citing Triplett v. City of Vicksburg, 758 So.2d 399,(¶ 9) (Miss.2000); Shaw v. Shaw, 603 So.2d 287, 292 (Miss.1992)). Therefore, we will only address Maria's claim that the trial court erred in overruling her motion.
¶ 11. The trial court overruled Maria's motion based upon the doctrine of res judicata. It noted the Ohio court had reached a final decision regarding the issue of personal jurisdiction and, as a result, affirmed its judgment of divorce. The appropriateness of application of the doctrine of res judicata is a question of law. Global Oceanic Enters. v. Hynum, 857 So.2d 659(¶ 8) (Miss.2003). As such, our review is de novo. Id.
¶ 12. Res judicata bars all issues that were, or could have been, decided in the first cause of action. Id. at (¶ 11). This includes questions of jurisdiction over the subject matter or parties involved. Id. In determining
whether the judgment amounts to res judicata on the question of the jurisdiction of the court which rendered it over *109 the person of the respondent, it is of no moment that the appearance was a special one expressly saving any submission to such jurisdiction. That fact would be important upon appeal from the judgment. . . .
Id. at (¶ 11) (quoting Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 524-25, 51 S.Ct. 517, 75 L.Ed. 1244 (1931)). A prior challenge to the jurisdictional issue is required in order for a subsequent court to apply res judicata. Global Oceanic Enters., 857 So.2d at (¶ 12).
¶ 13. When presented with a complaint and summons of a foreign state, a defendant has three options available. Id.
First he may ignore the complaint and summons, and, then if a default judgment is issued against him, he may challenge that judgment on jurisdictional grounds in a collateral proceeding when the plaintiff seeks to enforce the judgment. Second, he may voluntarily waive any lack of personal jurisdiction and submit to the distant court's jurisdiction. And third, he may submit to the jurisdiction of the court for the limited purpose of challenging jurisdiction.
Id. (quoting Department of Human Servs. v. Shelnut, 772 So.2d 1041(¶ 14) (Miss. 2000)). If the defendant elects to proceed with the third option the foreign court's determination on the issue of jurisdiction is binding. Id.
¶ 14. In her initial complaint collaterally attacking the Ohio court's judgment Maria claimed that following her separation from Richard she established a residence in Picayune, Mississippi on September 21, 2003, that Richard did not know where she was until April 2004, and that the Ohio court lacked personal jurisdiction over her as she "was neither served in the State of Ohio nor in the State of Mississippi." Following a hearing, and being advised of the proceedings in Ohio, the chancery court directed Maria to contest jurisdiction in Ohio, and it suspended litigation in Mississippi pending the result. Maria reluctantly complied.
¶ 15. In her motion contesting jurisdiction filed in the Ohio court, Maria argued that the Ohio court lacked personal jurisdiction over her as she was never properly served. She stated that following her move to Picayune, she moved to Lumberton, Mississippi. She claimed that she was a resident of Lumberton, and had been for more than sixty days prior to any orders of the Ohio court. She further argued that, as a consequence, the judgment of divorce, and all subsequent orders, were void. A hearing was initially scheduled for February 28, 2005. Maria called the Ohio court and indicated that the current court date did not give her enough time to make those arrangements necessary to attend the hearing, and she asked for a continuance. The Ohio court obliged Maria and continued the matter until May 17, 2005. Maria failed to attend the hearing, nor was she represented by counsel. The Ohio court not only dismissed Maria's motion based upon failure to prosecute, but also on the merits of her claim.
The courts of this State are bound to give full faith and credit to a judgment of a sister state. This rule is subject to the principle that the courts of this State are not required to recognize the judgment of another state where the judgment was rendered by a court without jurisdiction or where it has been obtained by extrinsic fraud. This principle is in turn subject to the limitation that if the court of the state which rendered the judgment has expressly litigated the jurisdictional question or the matter of fraud that the determination becomes res judicata on this point and is, itself, protected by the full faith and credit clause of the Constitution of the *110 United States, Article IV, § 1. Therefore, a jurisdictional question cannot be relitigated a second time in another state.

Global Oceanic Enters., 857 So.2d at (¶ 18) (citing Galbraith & Dickens Aviation Ins. Agency v. Gulf Coast Aircraft Sales, Inc., 396 So.2d 19, 21 (Miss.1981)). Through her motion contesting jurisdiction in the Ohio court, Maria had her opportunity to fully present her defense on her claim of lack of personal jurisdiction. After requesting a continuance for the purposes of preparation, she failed to attend the hearing on her motion. Nevertheless, the Ohio court ruled that it did have jurisdiction and dismissed Maria's motion on its merits. Any further attempt to challenge the issue of personal jurisdiction would be barred. In accordance with Global Oceanic Enters., and similar precedent, the trial court did not err in overruling Maria's motion collaterally attacking the judgment of the Ohio court on the grounds of lack of personal jurisdiction. As such, we affirm.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF LAMAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.